**Affirmed and Memorandum Opinion filed December 21, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00072-CR

### RODERICK MCCORMICK, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 15-DCR-069371**

## M E M O R A N D U M     O P I N I O N

Appellant Roderick McCormick appeals his conviction for felony assault of a family member by impeding breath or circulation.[1] Appellant raises three issues on appeal: (1) the trial court erred by denying his motion for mistrial based on a witness's introduction of inadmissible evidence of prior bad acts; (2) the trial court erred by including an instruction in the jury charge that commented on the weight of

---

[1] Tex. Penal Code Ann. § 22.01(b)(2)(B) (West 2015).

the evidence; and (3) the evidence is insufficient to sustain his conviction. We overrule appellant's first issue because the trial court promptly instructed the jury to disregard the inadmissible evidence and the record reveals no harm that was not cured by the instruction. We overrule appellant's second issue because the trial court properly instructed the jury and did not comment on the weight of the evidence. We overrule appellant's third issue because sufficient evidence exists to support the jury's finding that appellant committed the charged offense. We thus affirm the trial court's judgment.

## BACKGROUND

The jury heard evidence that on February 22, 2015, appellant and his wife, the complainant, engaged in a physical altercation. The complainant stated that earlier that day, she and her two younger children attended a new church in response to a flyer she had received at work. Unbeknownst to the complainant, appellant's mistress attended the church and the complainant saw her in the choir.[2] Upon returning home, the complainant was upset because she had seen the mistress but did not want to "start anything" with appellant by bringing it up. Instead, the complainant went into the garage after arriving home and began banging a bucket with a stick to let out her frustration. Appellant was in the front yard at the time, playing with the couple's younger children.

After a short time in the garage, the complainant went into the house but stood at the door with her back to the room. Appellant, who came into the house after hearing the sounds in the garage, came up behind her asking her what was wrong.

---

[2] Appellant's affair with the mistress began sometime in 2014 and, according to appellant, ended some time prior to February 22, 2015, but problems regarding the affair lingered. As a result of the affair, the complainant became depressed and received prescription medication for depression and anxiety. At the time of trial, the complainant no longer took the medication but continued to receive counselling.

2

The complainant told appellant she could not take it anymore and that appellant would need to leave. When the complainant refused to turn around appellant grabbed the back of her shirt. When she still did not turn around, appellant used his arm to grab her by her neck to turn her around. He got the complainant to turn around and slammed her on the ground, then remained partially on top of her. The complainant testified that at that point, she was very scared because she could not breathe. Appellant had placed the bulk of his weight on one side of the complainant and every time she tried to raise up appellant applied pressure to her neck with his forearm. Once the complainant remained still and asked appellant to stop, appellant agreed and released her. As they got up, appellant again grabbed the complainant in a "bear hug" from behind. As she slipped away from him, appellant grabbed the top of her hair.

The complainant testified that after appellant released her hair she went and sat on the couch. According to the complainant, appellant then went to the kitchen, grabbed a large kitchen knife, and came over to the couch with the knife. Appellant held the knife to the complainant's side and her throat in an effort to get the complainant to talk to him. During this time, appellant told the complainant that she needed to calm down, he was not doing anything, she did not need to worry about anything, and that they were going to talk. They both remained calm and appellant then put the knife down. After their conversation, appellant returned to the front yard where the children were playing, and the family completed the evening without further incident. The complainant stated she did not make a police report or call anyone for help that night because her kids did not know what had happened, she did not want to disrupt the family, and she did not want anyone to know her business.

The next day, the complainant went to work. On her lunch break, the complainant walked to a nearby police station to make a report regarding the

incident.  The complainant explained that she did not believe appellant was trying to kill her, but she believed he could have done so by accident and she thus wanted to let someone know what had happened.  She did not want appellant to go to prison, and she did not want her children or neighbors to know what happened, but she wanted the police to know what took place in case something happened in the future.

Appellant also testified at trial and provided a different version of the event.  According to appellant, the complainant was coughing, breathing hard, and looked very upset when she came in from the garage.  He told the jury that the complainant had not been consistently taking her medication for depression, the lack of which makes her frantic and irate, and that he was trying to calm her down.  The complainant came in from the garage and went straight to the couch, where appellant spoke with her, asking her to calm down.  When the complainant did not calm down, and instead asked him to leave the house, appellant stated he went back out in the front yard to play with the children until the complainant calmed down.  Appellant denied choking the complainant, wrestling her or slamming her to the floor, or putting a large kitchen knife to her neck.

The State charged appellant by indictment with one count of assault of a family member by impeding breath or circulation, and one count of aggravated assault with a deadly weapon.  The trial court submitted the case to the jury on both counts.  The jury found appellant guilty of assault of a family member by impeding breath or circulation, but not guilty of aggravated assault with a deadly weapon.  The trial court assessed punishment at four years' confinement in the Texas Department of Criminal Justice Institutional Division, suspended for a term of eight years on community supervision.  This appeal followed.

4

## I.    Sufficient evidence supports the jury's verdict.

In his third issue, appellant contends the evidence is "factually insufficient to sustain conviction." We construe this as a challenge to the legal sufficiency of the evidence. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (legal sufficiency standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."). We address this issue first because it would entitle appellant to the greatest relief. *See Lucas v. State*, 245 S.W.3d 611, 612 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

In reviewing the legal sufficiency of the evidence to support a conviction, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.). In our review, we consider all of the evidence in the record, whether admissible or inadmissible. *Price*, 502 S.W.3d at 281. The jury is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may choose to believe or disbelieve all or a portion of a witness's testimony, and we presume that the jury resolved any conflicts in the evidence in favor of the prevailing party. *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) ("We defer to the jury's finding when the record provides a conflict in the evidence."); *Jackson v. State*, 495 S.W.3d 398, 405 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Under the penal code, a person commits the offense of assault if the person

"intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." Tex. Penal Code § 22.01(a)(1). The offense is considered a third-degree felony if the offense is committed against a family member, as defined in sections 71.0021(b), 71.003, or 71.005 of the Family Code, and "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." Tex. Penal Code § 22.01(b)(2)(B). The indictment and the jury charge tracked these elements of section 22.01(b)(2)(B), and appellant does not claim otherwise on appeal.

Appellant first argues that the evidence is insufficient to establish choking or impeding breath. We disagree. The jury heard testimony from the complainant describing how appellant put his arm around her neck, slammed her to the ground while putting his significantly heavier weight upon her, and tightened his arm each time she struggled. She testified that she was very scared because she could not breathe when he tightened his arm. The jury viewed pictures of the complainant taken the following day at the police station, which depicted redness and scratches on her neck. The evidence is legally sufficient to support a finding that appellant impeded the normal breathing or circulation of blood of the complainant by applying pressure to her throat or neck. *See Marshall*, 479 S.W.3d at 845 (evidence legally sufficient where complainant testified appellant held pillow against her face and she was unable to take deep breaths when he did so).

On appeal, appellant points to his own testimony denying that he choked the complainant, the complainant's failure to take her medication for depression consistently, the fact that she did not appear to be scared of appellant, and her delay in making a report until the next day. These facts either represent conflicts in the evidence or go to the weight and credibility of the evidence and are therefore within

6

the province of the jury to consider and resolve. *See Temple v. State*, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013) ("[T]he evidence is not rendered insufficient simply because appellant presented a different version of the events." (quoting *Turro v. State*, 867 S.W.3d 43, 47 (Tex. Crim. App. 1993)). We will not disturb the jury's decision resolving the conflicts or weighting the evidence. *See id*; *Montgomery*, 369 S.W.3d at 192 (reviewing court must not usurp role of jury in assessing weight and credibility of witnesses).

Appellant also argues that the evidence is legally insufficient to establish the bodily injury element of the offense because the complainant recounted feeling pain when appellant grabbed her hair but did not mention pain when describing the choking. Direct testimony regarding pain is not required, however. In *Marshall*, the Court of Criminal Appeals explained that a finding of impeding the complainant's breathing satisfies the bodily injury requirement *per se*. *Marshall*, 479 S.W.3d at 845 (explaining that the jury "only needed to determine whether the evidence supported a finding that he impeded Shawne's breathing, thereby finding bodily injury *per se*"). Moreover, any physical pain, however minor, will suffice to establish bodily injury. *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012); *Crow v. State*, 500 S.W.3d 122, 129 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). A fact finder may infer that the complainant actually felt or suffered pain while being choked because people of common intelligence understand pain and the natural causes of it. *See Crow*, 500 S.W.3d at 129. The jury heard the complainant describe how appellant put his arm around her neck, slammed her to the ground, and proceeded to tighten his arm around her neck when she struggled, cutting off her breathing. The jury could infer from these circumstances that the complainant suffered some amount of pain. *See id.*

Viewing the entirety of the evidence in the light most favorable to the jury's

verdict, we conclude that a reasonable factfinder could find beyond a reasonable doubt that appellant committed the offense of assault of a family member by impeding breath or circulation in violation of the penal code. *Marshall*, 479 S.W.3d at 845. We overrule appellant's third issue.

## II. The trial court did not abuse its discretion in denying the motion for mistrial.

In his first issue, appellant contends the trial court erred in denying his motion for mistrial because the complainant injected inadmissible bad acts in her testimony. Specifically, appellant contends the trial court should have granted a mistrial after the complainant twice referenced physical and mental abuse in her marriage.

The first time the complainant mentioned abuse came in response to a question from the prosecutor regarding what things were going on in the relationship that made the complainant feel it was not normal. The complainant responded: "physical and mental abuse." Appellant's counsel immediately objected to the statement as a violation of a motion in limine. The trial court cautioned the prosecutor to "be careful to emphasize the specific event." The second reference came from the complainant when discussing her visit to the church on the morning of the incident. The complainant testified:

> After service one of the ladies, the prayer ministry ladies seen how bad I was hurting because I was in the audience receiving the word and she called me to the back and we just had a one on one conversation. I didn't mention the lady at all, the member of that church, I didn't mention her or bring her up or anything. I just told her what was going on in my home physically and mentally and we prayed together and I took her phone number and she wanted me to keep in contact with her.

Appellant's counsel again objected and requested a bench conference. At the conference, counsel for the State and appellant agreed that the jury should be instructed to disregard the contents of the discussion with the person at the church.

The trial court instructed the jury "to disregard the witness's response to the last question that was asked." Appellant then moved for a mistrial, which the trial court denied.

### A. Appellant's motion was timely.

As an initial matter, we address the State's contention that appellant failed to preserve error because he did not obtain a ruling or request an instruction regarding the first reference to physical and mental abuse. Citing *Griggs v. State*, 213 S.W.3d 923 (Tex. Crim. App. 2007), the State contends appellant's failure to move for a mistrial at the first mention of the abuse makes the motion untimely. We disagree.

To preserve error from the denial of a motion for mistrial, an appellant must make a timely and specific motion as soon as the grounds for it become apparent. *See Griggs*, 213 S.W.3d at 927; *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc). A motion for mistrial is untimely if it is made at the end of a witness's testimony and without objection. *See, e.g.*, *Griggs*, 213 S.W.3d at 927; *Veras v. State*, 410 S.W.3d 354, 357-58 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In *Griggs*, the Court of Criminal Appeals held a motion for mistrial untimely, explaining that the appellant could have (1) asked to approach the bench, (2) asked the trial judge to excuse the jury, (3) objected to the testimony, (4) asked the trial judge to instruct the witnesses not to mention extraneous offenses, (5) requested a curative instruction, and (6) moved for a mistrial if he believed no instruction could be effective. *Id.* The court further noted that "[i]f a party delays [his] motion for mistrial, and by failing to object allows for the introduction of further objectionable testimony or comments and greater accumulation of harm, the party could no more rely on the untimely motion for mistrial than on an untimely objection." *Id.* (citing *Young*, 137 S.W.3d at 70).

Unlike the appellants in *Griggs* and *Veras*, appellant in this case did object

9

to the first reference made by the complainant to prior mental and physical abuse and did obtain an instruction from the trial court to the witness and counsel to be careful to emphasize the specific event. This is consistent with the preferred sequential method of preserving error, that is: (1) object when possible; (2) request an instruction to disregard if the prejudicial event has occurred; and (3) move for mistrial if a party believes an instruction to disregard was not sufficient. *See Veras*, 410 S.W.3d at 357. When the complainant again mentioned physical and mental abuse shortly thereafter, appellant's counsel again objected, asked for and obtained a limiting instruction, and moved for a mistrial, which the trial court denied. We conclude that under the facts of this case, the motion for mistrial was timely.

**B. The instruction to disregard cured any prejudice.**

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Jackson*, 495 S.W.3d at 421. We view the evidence in the light most favorable to the trial court's ruling and will uphold the ruling if it falls within the zone of reasonable disagreement. *Ocon*, 284 S.W.3d at 884. A mistrial is an extreme remedy reserved for a narrow class of cases in which the error is highly prejudicial and incurable. *Id.* In determining whether a mistrial is warranted, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *Jackson*, 495 S.W.3d at 421.

Testimony that improperly refers to or implies extraneous offenses allegedly committed by a defendant may generally be cured by a prompt instruction from the trial court to disregard the testimony. *See Ladd v. State*, 3 S.W.3d 547, 571 (Tex. Crim. App. 1999); *Phillips v. State*, 130 S.W.3d 343, 348 (Tex. App.–Houston [14th Dist.] 2005) *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006). An exception to this general rule exists if "the improper testimony is clearly calculated to inflame the

minds of the jury and is of such a character to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *Jackson*, 495 S.W.3d at 421 (citing *Hudson v. State*, 179 S.W.3d 731, 738 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

The exception does not apply in this case. Nothing in the record indicates that the complainant's two references to physical and mental abuse were of such a character as to make it impossible to remove the harmful impression from the jurors' minds. The two references cited by appellant were non-specific, were not solicited by the State, and were not repeated throughout the remainder of the trial.[3] The trial court promptly instructed the jury to disregard the complainant's testimony regarding the abuse. The references are similar to those typically cured by an instruction to disregard. *See Ladd*, 3 S.W.3d at 571 (reference to appellant's three or four juvenile arrests); *Jackson*, 495 S.W.3d at 421 (reference to appellant's prior record); *Hudson*, 179 S.W.3d at 738-39 (mention of several assaults in days leading up to incident). We must presume the jury followed the trial court's instruction to disregard, and appellant has not shown that the instruction did not cure the potential harm from any impression left by the testimony. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Jackson*, 495 S.W.3d at 421. In fact, the jury acquitted appellant of the second offense, assault with a deadly weapon, thus demonstrating that the references did not inflame the minds of the jury against appellant. We overrule appellant's first issue.

---

[3] Appellant argues that the State did attempt to elicit another reference to extraneous offenses later in the trial regarding the reasons the complainant did not immediately report the incident to police. The State approached the bench before eliciting any such evidence, however. Appellant's counsel then conducted a voir dire of the complainant regarding her reasons outside the presence of the jury, and the State did not elicit any evidence of prior bad acts.

**III.    The trial court properly instructed the jury on the definition of act.**

In his second issue, appellant asserts the trial court erred by including in the jury charge the definition of "act" found in the Penal Code. According to appellant, the definition was unnecessary and resulted in an improper comment on the weight of the evidence.

The charge submitted two offenses to the jury: (1) assault of a family member by impeding breath or circulation; and (2) aggravated assault with a deadly weapon. The instructions on aggravated assault with a deadly weapon were broken into two paragraphs, asking the jury whether appellant committed the offense by (a) causing bodily injury by pulling the complainant with his hand while using or exhibiting a deadly weapon; or (b) threatening the complainant with imminent bodily injury while exhibiting a deadly weapon. Under the instructions in the abstract portion of the charge, assault by impeding breath or circulation and aggravated assault with a deadly weapon by causing bodily injury required proof of intentional, knowing, or reckless conduct. Aggravated assault with a deadly weapon by threatening a person with imminent bodily injury required proof of intentional or knowing conduct. The charge then included the statutory definitions for intentional, knowing, or reckless conduct found in section 6.03 of the Penal Code, each of which includes the word "acts." *See* Tex. Penal Code § 6.03(a) ("A person acts intentionally, or with intent, with respect to the nature of his conduct . . ."); § 6.03(b) ("A person acts knowingly or with knowledge, with respect to the nature of his conduct. . ."); § 6.03(c) ("A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct. . ."). The charge then stated that an "act" is "a bodily movement, whether voluntary or involuntary, and includes speech." *See* Tex. Penal Code § 1.07(a)(1). All of the definitions tracked the statutory definitions found in the Penal Code.

On appeal, appellant argues that defining the term act to include speech was

unnecessary and impermissibly singled out specific evidence. The State responds that the definition of act was taken from the Penal Code and was necessary to give meaning to the term act in the applicable definitions of criminal intent, an element of the offenses. We conclude the trial court did not abuse its discretion in providing the Penal Code definition of act in the jury charge.

In reviewing a claim of charge error, we first analyze whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, we then determine whether reversal is warranted based on the degree of harm. *See Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). The degree of harm necessary to require reversal depends upon whether appellant preserved the error by objecting at trial. *Id*; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If, as in this case, the appellant properly objected to the instruction given, reversal is required if we find "some harm" to the appellant's rights. *Ngo*, 175 S.W.3d at 743.

A trial court must provide a written charge to the jury distinctly setting forth the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). The law applicable to the case includes statutory definitions that affect the meaning of the elements of the offense. *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *Lovings v. State*, 376 S.W.3d 328, 337 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "A trial court has broad discretion in submitting proper definitions and explanatory phrases to the jury." *Nejnaoui v.State*, 44 S.W.3d 111, 119 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

The charge submitted by the trial court in this case used definitions taken from the Penal Code to describe the conduct required to support a conviction of each charged offense. The trial court properly communicated to the jury each statutory definition affecting the meaning of the elements of the charged offenses. *See*

13

*Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (instructing jury on law applicable to case "requires that each statutory definition that affects the meaning of an element of the offense must be communicated to the jury") (internal quotations omitted). As such, we disagree with appellant that the definition of "act" was unnecessary.

Of course, even definitions provided by the Penal Code must be tailored to the facts of the case. *See Burnett v. State*, 541 S.W.3d 77, 84 (Tex. Crim. App. 2017) (trial court must submit only portions of the statutory definition of "intoxicated" that are supported by the evidence). Here, the State charged appellant with aggravated assault with a deadly weapon by threatening the complainant with imminent bodily injury. Threatening another person can involve bodily movement that includes speech. The complainant testified that as he held the knife to her side, appellant said "look at me, we going to talk," and as he held the knife to her neck, appellant told her to turn around. Thus, under the facts of the case, speech in combination with use of the knife was an act applicable to the charged offense of threatening bodily injury, and the challenged instruction properly informed the jury that it could consider movement and accompanying speech in determining intent.

In support of his argument on appeal, appellant cites a number of cases addressing whether a trial court errs by instructing a jury on non-statutory presumptions or inferences that it may use in deciding the ultimate facts of the case or whether a court may consult non-statutory definitions in conducting a sufficiency review. *See, e.g.*, *Walters v. State*, 247 S.W.3d 204, 213 (Tex. Crim. App. 2007) (trial court properly refused instruction on non-statutory term "prior verbal threats" that was not grounded in the Penal Code, was already covered by general charge to the jury, and focused jury's attention on specific type of evidence); *Brown v. State*, 122 S.W.3d 794, 802 (Tex. Crim. App. 2003) (trial court erred by instructing jury

14

on non-statutory presumption that "[i]ntent or knowledge may be inferred by acts done or words spoken"); *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000) (determining proper definition to use for word arrest in escape statute); *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995) (addressing non-statutory definition of operate for purposes of sufficiency review). We find these cases inapposite. The definition of "act" used by the trial court was derived from the Penal Code and did not involve a presumption or inference.

The trial court did not abuse its discretion by including the definition of "act" from the Penal Code in the jury charge. We overrule appellant's second issue.

CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

/s/    J. Brett Busby
        Justice

Panel consists of Justices Busby, Brown, and Jewell.
Do Not Publish — TEX. R. APP. P. 47.2(b).

15