

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |
|---|---|
| § | No. 08-17-00216-CR |
| § | Appeal from the |
| § | 384th District Court |
| EX PARTE:  LUIS NAJERA. § | |
| § | of El Paso County, Texas |
| § | (TC# 20010D05849) |
| § | |

## **O P I N I O N**

Applicant Luis Najera appeals an order denying post-conviction relief.  In four issues, Najera contends: (1) there is no support in the habeas record for the trial court's finding that he failed to present competent evidence proving a codefendant was never charged in connection with the case; (2) there is no support in the habeas record for the trial court's finding that his codefendant was charged in connection with the case but subsequently obtained an expunction; (3) the State suppressed exculpatory evidence in violation of *Brady v. Maryland*[1]; and (4) there is no support in the habeas record for the trial court's finding that his confession constituted evidence that he caused the victim to be unlawfully arrested or detained.   We affirm.

---

[1] 373 U.S. 83 (1963).

**BACKGROUND**

This case springs from an attempt to get rid of a business competitor by having him unlawfully arrested and dropped off at the international border. Back in 2001, Luis Najera ran an auto-body shop at 8203 Alameda in El Paso, Texas. Working with him at this body shop was Edgar Ortiz. The men's working relationship soured when, according to Najera, Ortiz began missing work and otherwise performing poorly. The situation became unacceptable to Najera, and he informed Ortiz his services were no longer necessary. But after being fired, Ortiz opened his own auto-body shop down the street from his former employer. Najera was dismayed to discover that Ortiz was able to syphon off some of his clients and generally cut in on his business. So, he came up with a plan to get rid of this unwanted competition.

Najera was friends with a deputy police officer named Xxxxx Xxxxxxx.[2] He knew the deputy through the deputy's wife's father, Jose De La Luz, who would drink beer with Najera once a month. One day, Najera paid De La Luz a visit and the deputy happened to be there. It was then that Najera asked the deputy for a favor. Najera told him what had happened with Ortiz and how Ortiz was affecting his business and stealing his clients. He let the deputy know that Ortiz was not a U.S. Citizen and lacked the proper paperwork to work in the U.S. legally. Najera asked him if he would be willing to take Ortiz to the international bridge, drop him off there, and tell him to return to Mexico. The deputy agreed to do Najera the favor, and a few weeks later, on July 25, 2001, Najera called the deputy and gave him the address of Ortiz's shop.

Ortiz was working away from the shop the morning of the 25th but returned around 3:00 p.m. As he pulled into the back of his shop, he noticed a vehicle from the Sheriff's Department

---

[2] The officer's name has been redacted due to the expunction of his record.

2

was parked in the parking lot. When Ortiz got out of his car, he was approached by Deputy Xxxxx. The deputy asked if he was Edgar Ortiz, and when Ortiz responded in the affirmative, the deputy replied that he had problems. Deputy Xxxxx informed Ortiz he was a Sheriff's detective and was conducting an investigation, though he did not state what exactly he was investigating. He placed Ortiz against his vehicle, performed a pat down, and then handcuffed Ortiz. Ortiz asked the deputy what the problem was, and the deputy replied by asking Ortiz if he had wronged someone recently. Ortiz responded that the only person he could think of he had wronged was his former employer, Najera, by walking out on him. Deputy Xxxxx placed Ortiz in the back of his squad car, informing Ortiz he would be driving him to the El Paso County Detention Facility to see if there was a signed order for his arrest. He told Ortiz that if a signed order did not exist, he would still need to turn Ortiz over to Immigration and Customs Enforcement because he had already been reported to that agency. Ortiz again asked why he had been arrested, and Deputy Xxxxx stated there was a complaint against him for robbery, fraud, and armed robbery, and that these charges were felonies. Deputy Xxxxx let Ortiz know that the complaint had been filed by Najera's auto-body shop.

They began driving to the station and, while en route, Deputy Xxxxx asked if there was some way he could help Ortiz out. Ortiz replied that he did not know the deputy had the authority to help him. Deputy Xxxxx suggested that if they arrived at the station and it turned out there was not a signed order for Ortiz's arrest, he would help Ortiz by not turning him over to I.C.E. and would instead take him to the international bridge and drop him off there, provided Ortiz would let Deputy Xxxxx keep his passport.

They arrived at the El Paso County Detention Facility, and Deputy Xxxxx parked and

3

walked Ortiz into the building. Ortiz, still handcuffed, was told to sit down while Deputy Xxxxx checked if the signed order for Ortiz's arrest existed. Ortiz, who could not speak English, listened without understanding to Deputy Xxxxx speak with a woman in the processing area. Deputy Xxxxx returned and informed Ortiz that no signed order existed. He then walked Ortiz back out to the squad car, where he removed his handcuffs. At this time, Deputy Xxxxx had Ortiz's passport in his possession. He asked Ortiz what he wanted to do: did he want him to take him to I.C.E., or was he willing to let Deputy Xxxxx keep his passport and drop him off at the international bridge. Ortiz responded that he wanted the officer to help him out, but that he also wanted to keep his passport. The deputy responded he was willing to let him keep his passport, but that he did not want to see Ortiz return to his auto-body shop or his home in El Paso. Deputy Xxxxx again placed Ortiz in the back of the squad car and left the detention center. While driving, Deputy Xxxxx handed his cellular phone back to Ortiz and told him to call the man Ortiz was renting his auto-body shop from, Camilo Esparza, and tell him he would not be returning to the shop. Ortiz called Esparza and told him he was having trouble with law enforcement and would not be able to return to the shop. Following this call, Deputy Xxxxx pulled over at a local business and made a copy of Ortiz's passport. He returned to the squad car and told Ortiz what he had done. Deputy Xxxxx then drove Ortiz to a Diamond Shamrock gas station, where he returned Ortiz's passport and released him.

Ortiz did not return to work for a week. After discussions with Esparza, Ortiz filed a complaint against Deputy Xxxxx for what had transpired. Based on the complaint, Najera was charged as a party with the class-A misdemeanor offense of official oppression. Najera confessed to his role in Deputy Xxxxx's arrest of Ortiz in a statement to Detective Pete Escajeda:

4

> I told Xxxxx[3] if he would do me a favor. Officer Xxxxx told me that he would. I told [O]fficer Xxxxx that Edgar Ortiz was affecting me[.] That Ortiz was taking some of my clients away from my business[.] I told [O]fficer Xxxxx that Mr. Ortiz was not an American Citizen and that he did not have proper papers to even work in the United States.[] I told [O]fficer Xxxxx to take Mr. Edgar Ortiz to the bridge and drop him off there so that he would return to Mexico. On July 25, 2001, around 8:00 [a.m.], I called the Montana Sub Station and talked to [O]fficer Xxxxx. I told [O]fficer Xxxxx where Edgar Ortiz had his shop and gave him the address. Later that same day of July 25, 2001, I received a phone call from Officer Xxxxx and he told me that he had arrested Edgar Ortiz. I now know and realize that what I did was a stupid mistake and I should not have done what I did or asked an officer for such a favor.

After the charges against Najera where filed and he had confessed to his participation, Ortiz reported to police that Najera had subsequently offered him money to drop the official-oppression charge and to not show up to court. He also claimed Najera had threatened him. Ortiz relayed that on September 29, 2001, Najera's wife, Laura, came to Ortiz's shop with her young son and told him they did not want any problems and were willing to pay him if he would drop the charges. When Ortiz rebuffed this offer, she pleaded with him that Najera might lose his job over the charges and her family would be in dire straits. Ortiz agreed to speak to detectives about why Najera had been arrested, and Laura stated she would return the following Monday.

When Monday came, Laura returned to the shop and asked Ortiz if he had considered her offer. Ortiz told her it would be difficult for him to drop the charges. She again implored him to drop the charges and stated that the family may lose their home if Najera lost his job. While she was pleading with Ortiz, Najera himself called Laura's cell phone and asked to speak with Ortiz. Ortiz took the phone, and Najera asked Ortiz if he was afraid. Ortiz responded that he was because he had never had problems with the authorities before. Najera stated the whole thing

---

[3] The name of the deputy was also redacted in the records supplied to the Court due to the subsequent expunction of charges brought against the deputy. "Xxxxx" here denotes the redactions in the record.

could be resolved quickly if Ortiz so desired, and relayed that the deputy's family would give him $5,000 if he would drop the charges. Ortiz replied that he would have to think about it, and Najera requested he call him with his decision.

Later that evening, Ortiz called detectives and informed them about the offered bribe. The detectives asked Ortiz to record any further conversations with anyone about the case and provided him with a tape recorder. The following evening, using the tape recorder, Ortiz called Najera and told him that he wanted to settle the problems they were having but wanted assurances that his problems would not continue after he dropped the charges. Najera stated he would give Ortiz the money he had offered but qualified that Ortiz could not show up to court and would have to leave El Paso. He elaborated that his brothers were angry with Ortiz, which Ortiz took as an implied threat, and that the family of the deputy were angry as well. Najera also claimed he had personally stopped Deputy Xxxxx's family members from going to Ortiz's house to "harm" him. Ortiz told Najera he would have to think it over and would call him back later. He subsequently gave a recording of the conversation to detectives.

Based on the recording, Najera was charged with retaliation and tampering with a witness. Najera ultimately pleaded guilty to tampering with a witness. The retaliation and official oppression charges were dismissed by the State as part of the plea agreement. The State also agreed to drop a charge of tampering with a witness against Najera's wife, Laura, in exchange for Najera's plea.

Fifteen years later, on May 9, 2017, Najera filed an application for writ of habeas corpus under Article 11.072 of the Texas Code of Criminal Procedure. In his writ application, Najera claimed his counsel had rendered ineffective assistance in failing to properly investigate the facts

6

of the case and in advising him to plead guilty. He also asserted his attorney had failed to advise him regarding the elements of the tampering charge the State would need to prove and failed to discuss possible defenses with him. Finally, Najera claimed the State suppressed *Brady*[4] material by failing to disclose that Deputy Xxxxx was never indicted for official oppression or for tampering with a witness. The trial court denied Najera's application for habeas relief without a hearing and issued findings of fact and conclusions of law. Najera then filed what he termed a motion for new trial. The trial court did not consider the motion. This appeal followed.

## DISCUSSION

### Challenge to the Trial Court's Findings of Fact

In his first, second, and fourth issues, Najera argues that the trial court's findings of fact numbers twenty through twenty-two are wholly unsupported by the habeas record. While he argues the record does not support these findings, he does not argue the trial court abused its discretion in denying habeas relief based on these findings.

### *Standard of Review*

The trial judge is the sole finder of fact in a habeas proceeding under Article 11.072 of the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 11.072, §§ 7, 8; *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex.Crim.App. 2013). We afford almost total deference to a trial court's findings of fact when they are supported by the record, "especially when those findings are based upon credibility and demeanor." *Guerrero*, 400 S.W.3d at 583 (*citing Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)).

### *Analysis*

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

Finding of Fact 20

In his first issue, Najera asserts there was no support in the record for Finding of Fact 20, in which the trial court found, "The applicant has failed to present this Court with competent documentary or testimonial evidence proving that Deputy [Xxxxx] was never charged in connection with this case." He bases this contention primarily on his assertion that there is no indictment of Deputy Xxxxx on record with the El Paso County Clerk's Office, which he claims is evidence that the deputy was never indicted for official oppression. But as the State correctly points out, while the trial court may base its findings solely on affidavits, depositions, and interrogatories, sworn pleadings are not competent evidence in a habeas proceeding. *Guerrero*, 400 S.W.3d at 583 ("[I]n all habeas cases, sworn pleadings are an inadequate basis upon which to grant relief . . . ."). Because Najera merely verified his writ application and did not provide an affidavit setting forth his allegation that no record exists in the County Clerk's Office of a case against Deputy Xxxxx, his assertion was not competent evidence upon which to grant relief. *Id*.

Najera also argues that the State's reference in its response to the expunction of Deputy Xxxxx's record is itself evidence that the deputy was never indicted because two of the possible bases for expunction under Article 55.01 of the Code of Criminal Procedure are that (1) the indictment was never presented, or (2) if the indictment was presented, it was shown that the presentment of the indictment was made because of mistake, false information, the indictment was void, or other similar reason indicating the absence of probable cause. TEX.CODE CRIM.PROC.ANN. art. 55.01(a)(2)(A). From this, he reasons that an expunction based on either circumstance constitutes "a legal declaration that Deputy [Xxxxx] was never validly indicted for the offense of official oppression through an indictment that was based on truthful, accurate

8

information." He cites no authority for this proposition. We must give almost total deference to the trial court's findings of fact when supported by the record, and due to the purely speculative nature of the basis of Najera's claim that Deputy Xxxxx's expunction proves he was never validly indicted, the record was sufficient for the trial court to find he had failed to present competent evidence that Deputy Xxxxx was never charged with official oppression. *Guerrero*, 400 S.W.3d at 583. Even if the State's reference to Deputy Xxxxx's expunction constituted competent evidence that he was never validly charged with official oppression, Najera has not argued the trial court abused its discretion in denying habeas relief based on this finding of fact. Accordingly, Najera's first issue is overruled.

Finding of Fact 22

In the heading of his second issue, Najera contends there was no support in the habeas record for Finding of Fact 22[5], in which the trial court found that:

> In light of a memorandum opinion by the Eighth Court of Appeals, dismissing an appeal filed by the El Paso County Sheriff from the disposition of an expunction petition involving an individual named [Xxxxx Xxxxxx], *see In re Matter of the Expunction of* [*Xxxxx Xxxxxx*], No. 08-03-00048-CV, 2003 WL 21290958 at *1 (Tex.App.—El Paso, June 5, 2003)(mem. op.)(not designated for publication), and the fact that the Deputy's name has been redacted from the Sheriff's Department offense reports, it appears that Deputy [Xxxxx] was in fact charged in connection with this case, but subsequently obtained an expunction of those charges.

It initially appears that, in contrast to his previous contention, Najera is contending that there was no evidence in the record for the trial court to find that Deputy Xxxxx *was* charged with official oppression. But in his analysis, he points out that the habeas record in fact supports the trial court's finding. He states in his brief, "Deputy [Xxxxx] was a co-defendant with Najera, but []

---

[5] As in Issue One, Najera does not argue the trial court abused its discretion in denying habeas relief based on the allegedly erroneous fact finding.

9

the indictment pertaining to him no longer exists because he was granted an expunction." He goes on to argue that this finding supports his previous contention that Deputy Xxxxx was never validly charged with official oppression. In the memorandum opinion referenced, *In the Matter of the Expunction of* [*Xxxxx Xxxxxx*], our Court dismissed an appeal filed by the El Paso County Sheriff's Department from an expunction petition involving Deputy Xxxxx. 2003 WL 21290958, at *1. Further, the offense reports in the habeas record have the deputy's name and other identifying information redacted, as would be the case were his record expunged. *See* TEX.CODE CRIM.PROC.ANN. art. 55.01(a)("A person who has been placed under a custodial or noncustodial arrest for commission of either a felony or misdemeanor is entitled to have all records and files relating to the arrest expunged . . . ."). Accordingly, there was support in the record for the trial court's finding that Deputy Xxxxx was charged but subsequently obtained an expunction of those charges, and we will defer to that finding. *Guerrero*, 400 S.W.3d at 583. As to Najera's rearguing of his first issue in his second issue, we have already held this argument unpersuasive. Accordingly, Najera's second issue is overruled.

Finding of Fact 21

In his fourth issue, Najera contends there was nothing in the record to support Finding of Fact 21[6], in which the trial court found meritless his contention that there was no evidence in the record to show he caused Deputy Xxxxx to unlawfully arrest Ortiz.[7] The trial court found that:

> The applicant's allegations that there is no evidence showing that he caused Ortiz to be unlawfully arrested or detained and that Deputy Xxxxx alone made the decision to arrest Ortiz are false because the applicant confessed to causing Deputy

---

[6] Although in his issue statement on Issue Four Najera states he is addressing Findings of Fact 22, his quotation of the finding and his argument show he is actually addressing Findings of Fact 21.

[7] As in Issues One and Three, Najera does not argue the trial court abused its discretion in denying habeas relief based on the erroneous fact finding.

10

Xxxxx to engage in official oppression by arranging for Ortiz to be unlawfully detained or arrested.

Najera argues he did not confess to encouraging Deputy Xxxxx to unlawfully arrest Ortiz but "merely complained to Deputy [Xxxxx] that Ortiz was an illegal alien who should be returned to Mexico [which] does not amount to a confession to Official Oppression or any other crime." He further contends that the crime of official oppression could not have been committed by Deputy Xxxxx because after arresting Ortiz he released him when he discovered there was no outstanding warrant for his arrest.

As applies to the facts of this case, a public servant commits the offense of official oppression if, acting under the color of his office or employment, he intentionally subjects another to mistreatment or to arrest, detention, search, or seizure that he knows is unlawful. TEX.PENAL CODE ANN. § 39.03(a). A person may be criminally responsible as a party to that offense if:

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense; [or]

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]

TEX.PENAL CODE ANN. § 7.02 (a)(1)–(2).

After he was charged with official oppression as a party, Najera made the following statement to Detective Pete Escajeda:

I told Xxxxx if he would do me a favor. Officer Xxxxx told me that he would. I told [O]fficer Xxxxx that Edgar Ortiz was affecting me[.] That Ortiz was taking some of my clients away from my business[.] I told [O]fficer Xxxxx that Mr. Ortiz was not an American Citizen and that he did not have proper papers to even work in the United States.[] *I told [O]fficer Xxxxx to take Mr. Edgar Ortiz to the bridge and drop him off there* so that he would return to Mexico. On July 25, 2001, around 8:00 [a.m.], I called the Montana Sub Station and talked to [O]fficer Xxxxx.

11

> I told [O]fficer Xxxxx where Edgar Ortiz had his shop and gave him the address. Later that same day of July 25, 2001, I received a phone call from Officer Xxxxx and he told me that he had arrested Edgar Ortiz. I now know and realize that what I did was a stupid mistake and *I should have not done what I did or asked an officer for such a favor.* [Emphasis added].

Contrary to his assertion that he was merely complaining to Deputy Xxxxx about Ortiz's legal status and the effect he was having on Najera's business, his confession is evidence that (1) acting with the intent to promote or assist in conduct he knew to be wrong, (2) Najera solicited, encouraged, directed, and aided Deputy Xxxxx to commit the offense of official oppression by unlawfully arresting and detaining Ortiz while acting under the color of his office as a Sheriff's deputy.

As to his contention that the crime could not have been committed because Deputy Xxxxx released Ortiz after discovering there was no warrant for his arrest, that contention has no relevance to the elements of the offense, which only requires that a public servant intentionally subject another to unlawful arrest while acting under the color of his office. TEX.PENAL CODE ANN. § 39.03(a). The criminal act was complete as soon as Deputy Xxxxx made the unlawful arrest. Accordingly, the trial court's finding that Najera confessed to causing Deputy Xxxxx to engage in official oppression is supported by the habeas record, and we defer to that finding. Issue Four is overruled.

## Suppression of Favorable Evidence Under *Brady*

In his third issue, Najera contends the State suppressed favorable evidence in violation of *Brady v. Maryland*[8], claiming the State did not reveal the reason it chose to dismiss the charges against Deputy Xxxxx and assuming the reason was due to the existence of favorable evidence or

---

[8] 373 U.S. at 87.

circumstances that would have been beneficial to Najera. The State contends this complaint does not comport with the one made in Najera's writ application. Alternatively, the State contends Najera has not demonstrated that it either suppressed the alleged *Brady* evidence or that the evidence was material.

### *Standard of Review*

As noted above, we afford almost total deference to a trial court's findings of fact when they are supported by the record, "especially when those findings are based upon credibility and demeanor." *Guerrero*, 400 S.W.3d at 583.

To preserve error for review, a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Pena v. State*, 353 S.W.3d 797, 807 (Tex.Crim.App. 2011)(*quoting* TEX.R.APP.P. 33.1(a)(1)(A)). In the context of a writ application, if an appellant's argument on appeal does not comport with the argument in his application, we will not consider it. *Ex parte Evans*, 410 S.W.3d 481, 485 (Tex.App.—Fort Worth 2013, pet. ref'd); *Ex parte Torres*, 941 S.W.2d 219, 220 (Tex.App.—Corpus Christi-Edinburg 1996, pet. ref'd). If a *Brady* claim is not raised in the trial court, it is not preserved for review. *Keeter v. State*, 175 S.W.3d 756, 760 (Tex.Crim.App. 2005), *cert. denied*, 546 U.S. 852 (2005); *Jackson v. State*, 495 S.W.3d 398 (Tex.App.—Houston [14th Dist.] 2016, pet. ref'd), *cert. denied*, 138 S.Ct. 207 (2017); *Jones v. State*, 234 S.W.3d 151, 158 (Tex.App.—San Antonio 2007, no pet.); *but see Moore v. State*, 143 S.W.3d 305, 317–18 (Tex.App.—Waco 2004, pet. ref'd)(holding that *Brady* claims need not be preserved for appellate review because the right to disclosure of exculpatory

13

evidence can be waived but still must be implemented even if not requested).

***Applicable Law***

In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. A *Brady* claim requires the defendant show by a preponderance of the evidence that: (1) the evidence was withheld; (2) the evidence was favorable to the defense; and (3) the evidence was material. *Keeter*, 175 S.W.3d at 760. There can be no *Brady* violation without suppression of favorable evidence. *Harm v. State*, 183 S.W.3d 403, 406 (Tex.Crim.App. 2006)(*citing Jackson v. State*, 552 S.W.2d 798, 804 (Tex.Crim.App. 1976)). Suppression does not occur if the evidence was fully accessible to appellant from other sources. *Id*. *Brady* and its progeny do not require the State to produce exculpatory information that the State does not have in its possession or that is not known to exist. *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex.Crim.App. 1990), *cert. denied*, 500 U.S. 948 (1991). Generally, if the State opens its files for examination by defense counsel, it fulfills its duty to disclose *Brady* evidence. *Harm*, 183 S.W.3d at 407. In order for evidence to be material, the defendant must be prejudiced by the State's failure to disclose the favorable evidence; that is, there is a reasonable probability that result of the proceeding would have been different. *Id*., at 406 (*citing Banks v. Dretke*, 540 U.S. 668, 691 (2004)).

***Analysis***

As a preliminary matter, the State contends that Najera's argument in his writ application does not comport with his argument on appeal. It contends his writ argument was that the State

14

suppressed *Brady* material only by failing to disclose that Deputy Xxxxx was never indicted for official oppression or tampering with a witness, not that there was exculpatory evidence that lead to a dismissal of the case. Further, the State contends his argument was that that information was material only because it was Deputy Xxxxx—not Najera—who had allegedly offered Ortiz the $5,000 bribe. While Najera's section heading does seem to only address the failure to reveal that Deputy Xxxxx was never indicted, in his argument Najera stated, "the State should have revealed why Deputy [Xxxxx] was not being charged with Tampering with a Witness offense that Najera had been charged with and why Deputy [Xxxxx] was being allowed to go 'scot[] free.'" He went on to state, "The failure of the State to explain why Deputy [Xxxxx] was not being charged with both offenses, when he was identified as the second defendant in both indictments resulted in a clear *Brady* violation." This argument comports with his argument on appeal and was sufficiently specific to make the trial court aware of the complaint; thus, the issue was properly preserved. *Pena*, 353 S.W.3d at 807.

As to the merits of his contention, in asserting the State violated *Brady*, Najera argues that there must have been an agreement between Deputy Xxxxx and the State to dismiss the indicted case and grant him an expunction. And the only way Deputy Xxxxx could have received an expunction, he contends, would be if the indictment resulted from mistake, false information, or other similar reason indicating the absence of probable cause. Rounding out his syllogism, Najera asserts the information underlying the absence of probable cause would have cast doubt on the validity of his tampering charge. He does not state what that evidence was and points to nothing in the record establishing its existence; he merely speculates that it exists.

It is now well settled in Texas that naked assertions regarding the existence of exculpatory

15

evidence, absent more, are insufficient to meet an applicant's burden to demonstrate that evidence was suppressed as that term is meant in the context of *Brady*. *See Jackson*, 495 S.W.3d at 418 (holding counsel was not ineffective for failing to file a *Brady* claim in his motion for new trial because it would have been based on speculation by the defendant that a witness received undisclosed offers of leniency in exchange for her testimony, which was unsupported by the record); *Potter v. State*, 74 S.W.3d 105, 112 (Tex.App.—Waco 2002, no pet.)(holding that appellant's mere speculation that prosecution made an agreement with a witness in exchange for her testimony, absent more, was insufficient to establish suppression); *Johnson v. State*, 901 S.W.2d 525, 533 (Tex.App.—El Paso 1995, pet. ref'd)(holding that where the record failed to disclose the existence of an alleged composite sketch used to identify defendant, defendant's appellate claim that State failed to disclose it was precluded); *Griffis v. State*, No. 05-18-00222-CR, 2018 WL 6074702, at *4 (Tex.App.—Dallas Nov. 21, 2018, pet. ref'd)(mem. op., not designated for publication)(holding that appellant could not meet his burden to show State suppressed favorable evidence where he could not show the State possessed the evidence or that the evidence even existed, but merely speculated that it may exist); *Ex parte Reed*, Nos. WR–50,961–04, WR–50,961–05, 2009 WL 97260, at *6 (Tex.Crim.App. Jan. 14, 2009)(not designated for publication)(holding that conclusory *Brady* claims based on nothing more than mere conjecture and speculation do not constitute specific, particularized facts that if true would entitle a defendant to habeas relief). Thus, Najera's mere speculation about an agreement and exculpatory evidence that may have inspired that agreement fails to support his claim.

To the extent Najera still contends the State violated *Brady* by not disclosing that Deputy Xxxxx was never indicted for official oppression or tampering with a witness, that information

was readily available from other sources with the exercise of due diligence. Evidence that a defendant or his attorney either knew or should have known existed through the exercise of reasonable diligence cannot be considered suppressed under *Brady* and its progeny. *Harm*, 183 S.W.3d at 406. Moreover, the trial court found not credible in their entirety Najera's assertions that he was unaware that Deputy Xxxxx was not indicted for either charge[9], and further concluded that nothing in the record demonstrated what was or was not disclosed to his trial counsel regarding the status of charges against Deputy Xxxxx.[10] We are required to give special and near total deference to the trial court's credibility determinations. *Guerrero*, 400 S.W.3d at 583. Accordingly, because Najera has failed to demonstrate by a preponderance of the evidence that the State suppressed the existence of an agreement between it and Deputy Xxxxx, that any exculpatory evidence underlying such an agreement exists, or that the State suppressed the fact that Deputy Xxxxx was never indicted for official oppression or tampering with a witness, he has failed to demonstrate the trial court abused its discretion in denying his writ application. Issue Three is overruled.

## CONCLUSION

Having overruled Issues One through Four, the decision of the trial court is affirmed.

May 15, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

[9] "This Court finds not credible any assertion that the applicant, who had a close enough relationship with the Deputy to ask him to unlawfully detain or arrest Ortiz, did not know at the time whether Deputy [Xxxxx] was also charged."

[10] "Nothing in the record reflects that the applicant's trial counsel did not known whether Deputy [Xxxxx] had been charged or not in connection with this case or what exactly was or was not disclosed to trial counsel in this regard."

17