

# NUMBER 13-17-00563-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GILBERTO MIGUEL PEREZ,                                                    **Appellant,**

**v.**

THE STATE OF TEXAS,                                                          **Appellee.**

**On appeal from the 390th District Court
of Travis County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

By two issues, appellant Gilberto Miguel Perez challenges his conviction for assault causing bodily injury to a family member two or more times within twelve months, a third-degree felony. *See* TEX. PENAL CODE ANN. § 25.11(a). Perez argues: (1) the evidence is insufficient to support the charge of continuous family violence and (2) the trial court erred by denying his motion for mistrial. We affirm.

# I.    BACKGROUND[1]

Perez was charged by indictment with committing two assaults causing bodily injury within a twelve-month period against Yudaysis Hernandez.  *See id.*  Hernandez and Perez had been in a dating relationship.

The first assault was alleged to have occurred on June 20, 2016 at Hernandez's place of work, XTC Cabaret, in Austin, Texas.  Hernandez testified that while they were having drinks, Perez became angry with her and they got into a verbal altercation inside the club.  Video surveillance from the location showed that Perez punched Hernandez in the head from behind.  Management witnessed Perez hitting Hernandez on the surveillance video and intervened.  Although Perez and Hernandez left the location, the security officer contacted local law enforcement and an initial report was made.  The video surveillance was turned over to local law enforcement.

Hernandez testified that after they left the club, Perez was still very angry and broke the front windshield on her vehicle.  When they got to his apartment, Perez hit her, threw her against a bathtub and a table, and threatened her with a knife.  Perez caused Hernandez to hit a table knocking over photos of deceased relatives, and his anger subsided.  Hernandez explained that she was afraid of what would happen if she tried to leave.  The following day, Perez went with Hernandez to repair the windshield, and he allowed her to leave.  Hernandez stated that she was covered in purple bruises but told her family that she got into an altercation at work.

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this case was transferred to this Court from the Third Court of Appeals in Austin.  *See* TEX. GOV'T CODE ANN. § 73.001.

Hernandez stated that she did not report the incident to local police or follow up with their messages. Instead, she gave Perez another chance. However, Hernandez broke off their relationship shortly thereafter. She testified that on September 19, 2016, she noticed Perez following her on her way to work. Hernandez stated that she parked her car adjacent to her workplace and Perez entered her vehicle. While inside her vehicle, Perez became very aggressive, threatened her, grabbed her arm, knocked her glasses off her face, and produced a pocket knife. Hernandez testified that she knew then that she had to go to the police. Once Perez had left, Hernandez told management at her job that she needed to go to the police and she contacted Detective Kimberly Orts of the Travis County Sheriff's Office (TCSO).

Detective Orts testified that she had previously been called out to the club following the June assault, obtained the surveillance video from that night, and had left messages for Hernandez in June. The case remained inactive until Detective Orts was contacted by Hernandez in September, at which point Hernandez went to the TCSO and gave a statement. Hernandez allowed sheriff's deputies to photograph the bruises on her arm.

Perez was convicted by the jury, sentenced to five years' imprisonment in the Texas Department of Criminal Justice—Institutional Division, and assessed a $2500 fine. This appeal followed.

## II. EVIDENCE WAS SUFFICIENT

By his first issue, Perez argues the evidence is insufficient to support his conviction because the State did not prove there was bodily injury in the September 2016 assault.

### A. Standard of Review

When evaluating a sufficiency challenge, the reviewing court views the evidence in the light most favorable to the verdict to determine whether a rational jury could find the defendant guilty beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To reverse a conviction based on insufficient evidence, Perez must show that no rational jury could have found all the elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 902. The key question is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and a reviewing court is not to substitute its judgment as to facts for that of the jury as shown through its verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflict in favor of the verdict, even if it is not explicitly stated in the record. *Id.*

A reviewing court must measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof

or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.    *Id.*

## B.    Applicable Law

Under a hypothetically correct jury charge, a person commits the offense of assault bodily injury with continuous violence against the family if:   (1) during a period that is twelve months or less in duration; (2) two or more times; (3) the person engages in conduct that constitutes an offense under § 22.01(a)(1) against another person; (4) whose relationship or association is described by § 71.0021(b), 71.003, or 71.005 of the family code.[2]   TEX. PENAL CODE ANN. § 25.11(a).   Section 22.01 states that a person commits an offense if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse.   *Id.* § 22.01(a).   "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition."   *Id.* § 1.07(a)(8).   "This definition appears to be purposely broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching."   *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (en banc).

## C.    Discussion

Perez specifically argues that there was no evidence or testimony of pain by Hernandez to support the element of bodily injury in the September 2016 assault. However, the jury is permitted to draw all reasonable inferences from the evidence, including an inference that the victim suffered pain as a result of her injuries.   *Arzaga v. State*, 86 S.W,3d 767, 778 (Tex. App.—El Paso 2002, no pet.); *see Goodin v. State*, 750

---

[2]   The Texas Family Code sections referenced define dating violence, family, and household. *See* TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, & 71.005.

S.W.2d 857, 859 (Tex. App.—Corpus Christ–Edinburg 1988, pet. ref'd).   The existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish "bodily injury" within the meaning of the statute.   *See Goodin*, 750 S.W.2d at 859.

Testimony that a victim experienced pain is not required to prove bodily injury; "the jury is permitted to draw reasonable inferences from the evidence including the inference that the victim suffered pain as a result of her injuries."   *Arzaga*, 86 S.W.3d at 778; *see also Boguang Li v. State*, No. 03-18-00237-CR, 2018 WL 2423211, at *6 (Tex. App.— Austin May 30, 2018, no pet.) (mem. op., not designated for publication).   A factfinder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it.   *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012); *see also Penaloza v. State*, No. 03-16-00479-CR, 2016 WL 7046821, at *3 (Tex. App.—Austin Nov. 30, 2016, no pet.) (mem. op., not designated for publication).   The evidence at trial included Hernandez's testimony regarding Perez's actions in the September 2016 assault, as well as photographs taken by the TCSO depicting bruises on Hernandez's right arm.   Testimony from crime scene specialist Lanae Donovan explained how the TCSO used secured digital forensic imaging photography which produced more detailed photographs, that could help show injuries, however faint, better.   Although the assault occurred on September 19, 2016, Hernandez was not photographed until September 26, 2016 and still had observable injuries to her arm and face according to the testimony of TCSO employees.

Evidence of an injury that in common experience would be painful suffices to establish bodily injury. *See, e.g.*, *Shah v. State*, 403 S.W.3d 29, 34–35 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (concluding evidence was sufficient to establish bodily injury because jury could reasonably infer that lesion on bridge of nose would cause physical pain); *Arzaga*, 86 S.W.3d at 778 (noting that "existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain"). There is enough evidence in the record before us to conclude the jury's inference of bodily injury was reasonable. The jury was able to see and hear Hernandez as she gave her description of the incident, as well as observe the photographs taken by the TCSO a week following the assault. Therefore, we hold the evidence was sufficient to prove the September assault. We overrule Perez's first issue.

### III.   MISTRIAL PROPERLY DENIED

By his second issue, Perez alleges the trial court committed error by denying his motion for mistrial.

### A.   Standard of Review

"An appellate court reviews a trial court's ruling on a motion for mistrial . . . using an abuse-of-discretion standard of review." *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). "We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Id.* "We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* "Thus, a trial court abuses its discretion in denying a [motion for mistrial] only when no

7

reasonable view of the record could support the trial court's ruling." *Id.* However, "although a reviewing court may be required to accord great deference to the ruling of a trial court granting a mistrial, that trial court's ruling is not insulated from appellate review." *Pierson v. State*, 426 S.W.3d 763, 774 (Tex. Crim. App. 2014).

### B.    Applicable Law and Discussion

A mistrial is a severe remedy, and "[o]nly in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc). "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful or futile.'" *Id.* (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. *Id.*

"Because it is an extreme remedy, a mistrial should be granted 'only when residual prejudice remains' after less drastic measures are explored." *Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009) (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)). "Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternatives." *Id.* at 885.

A defendant's complaint may take three forms: (1) a timely, specific objection, (2) a request for an instruction to disregard, and (3) a motion for mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc). An objection serves as a

8

preemptive measure because "it informs the judge and opposing counsel of the potential for error" and "conserves judicial resources by prompting the prevention of foreseeable, harmful events." *Id.* "An instruction to disregard attempts to cure any harm or prejudice resulting from events that have already occurred." *Id.* "Where the prejudice is curable, an instruction eliminates the need for a mistrial, thereby conserving the resources associated with beginning the trial process anew." *Id.* "Like an instruction to disregard, a mistrial serves a corrective function." *Id.*

> A grant of a motion for mistrial should be reserved for those cases in which an objection could not have prevented, and an instruction to disregard could not cure the prejudice stemming from an event at trial—i.e., where an instruction would not leave the jury in an acceptable state to continue the trial.

*Id.*

Testimony that improperly refers to or implies extraneous offenses allegedly committed by a defendant may generally be cured by a prompt instruction from the trial court to disregard the testimony. *See Ladd*, 3 S.W.3d at 571; *Phillips v. State*, 120 S.W.3d 343, 348 (Tex. App.—Houston [14th Dist.] 2005), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006); *see also McCormick v. State*, No. 14-17-00072-CR, 2018 WL 6722341, at *5 (Tex. App.—Houston [14th Dist.] Dec. 21, 2018, no pet.) (mem. op., not designated for publication). An exception to this general rule exists if "improper testimony is clearly calculated to inflame the minds of the jury and is of such a character to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *Jackson v. State*, 495 S.W.3d 398, 421 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

During Hernandez's testimony, the State moved to introduce a text message Hernandez received. Hernandez stated she did not know who sent the text message but perceived it as a threat. Perez objected on the grounds that the text message had not been properly authenticated, was not relevant, and had not been translated from the Spanish language. The trial court found the text message was relevant, that the probative value outweighed the prejudicial effect, and that it would aid the jury. Additionally, the trial court had the court interpreter translate the message which stated: "You are playing with fire and you are going to get burned. You are being followed. Just keep going with your devilish lies." After the translation, the trial court determined that Hernandez did not know who the message was from, but the court was under the impression that the State would tie it back to Perez. When the State explained it would not be able to tie it back to the defendant, the following occurred:

Trial Court: I'm going to withdraw that piece of evidence and tell the jury that they are not to consider it, it cannot be tied to this defendant.

Perez: And, Your Honor, I would ask for mistrial. I feel it's prejudicial.

Trial Court: That will be denied.

. . . .

Trial Court: The jury is instructed that you are not to consider this piece of evidence that has been presented through this witness in any way, shape, or form. It cannot be authenticated and tied back to this defendant in this case. The Court rules that it will be stricken from the record, and you are instructed not to consider it for any purpose whatsoever.

Perez: And I re-urge my motion for mistrial.

10

Trial Court: It will be denied.

And the Court was under the impression that it could be tied back to this particular defendant, but it cannot. It has nothing to do with this case.

Perez's counsel promptly objected to the improper exhibit, and even though the evidence was presented to the jury, upon reconsideration the trial court sustained the objection, withdrew the State's exhibit, and gave an instruction to the jury to disregard the prior testimony. *See Ladd*, 3 S.W.3d at 571; *Phillips*, 120 S.W.3d at 348. Because the evidence was not of the nature "to inflame the minds of the jury" or of such a damning character as to make it impossible to remove the harmful impression from the jurors' mind, we hold that the instruction directing the jury to disregard the text message adequately addressed Perez's objection. *See Ladd*, 3 S.W.3d at 571; *Phillips*, 120 S.W.3d at 348. We presume that the jury followed the trial court's instructions and conducted itself accordingly. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (en banc). Therefore, we hold that the trial court did not err in denying Perez's motion for mistrial. We overrule Perez's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of June, 2019.

11